Ransom v. Duckett.

---

## Ransom v. Duckett.

1. *Agency—Proof of its Existence—Ratification.*—The existence of an agency can not be proved by the admissions and statements of the supposed agent, when not made while engaged in performing the business of the agency. nor can a ratification by the principal of the acts of an agent, be established by the declaration of the agent.

2. *Agency—Its Existence and Ratification.—Admission of an Agent, etc.*—An admission of a principal as to the authority of a person to act for him as his agent, or that he ratified or adopted the acts of such per-

son, is competent to be shown in evidence against the principal but; the declarations of the alleged agent, to be admissible in evidence against the principal, must have been made while he was engaged in transacting and performing the business of the agency, as a verbal act of the agency itself.

**Memorandum.**—Action for damages. Appeal from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and reversed. Opinion filed March 6, 1893.

The opinion of the court states the case.

## APPELLANT'S BRIEF.

When one of two innocent parties must suffer loss, the one whose negligence caused the loss must suffer. This doctrine has often been adjudicated by the courts of this and other States. Touching the fact that Duckett, in dealing with Brownlow, dealt at his peril, see Payne v. Potter, 9 Iowa, 549; Beach v. Vandewater, 1 Sandf. (N. Y.) 265; Hunt v. Chapin, 6 Lans. (N. Y.) 139; Morris v. Watson, 15 Minn. 212; Baxter v. Lamont, 60 Ill. 237; Peabody v. Hoard, 46 Ill. 242; Cooley v. Willard et al., 34 Ill. 68.

MORRISON & WHITLOCK, attorneys for appellant.

CHAS. A. BARNES and OWEN P. THOMPSON, attorneys for appellee.

OPINION OF THE COURT, *the Hon. Carroll C. Boggs, Judge.*

This is an appeal from a judgment against the appellant upon the verdict of a jury in the sum of $250 damages, said to have been occasioned by his refusal to accept and pay for a certain lot of cattle, alleged to have been sold by the appellee to him.

It is conceded that the damages awarded were excessive under the evidence, and the appellee, in this court, entered a *remittitur* of $79, for the purpose of curing the error in that respect. The appellant denies that he made the alleged contract.

It is not contended that he personally contracted for the

cattle, but that one Brownlow was authorized to, and did, buy them as his agent. The appellant testified, upon the trial, that Brownlow had no authority to buy the cattle for him, and Brownlow testified to the same effect.

The appellee sought to establish the agency of Brownlow by proof of facts and circumstances from which it is insisted a general agency to buy cattle ought to be implied. There had been no previous dealing between the appellee and appellant through the medium of the alleged agent, and it is not claimed that anything occurred between the parties hereto, in the course of the transaction in question, connecting the appellant with it. It is clear that Brownlow contracted for the cattle, but not clear that he assumed to do the buying for the appellant, or that the appellee understood, at the time the contract was made, that the appellant was the purchaser. Brownlow was authorized to buy hogs for the appellant, and at the time of the alleged purchase of the cattle, did buy some hogs in that capacity from the appellee, which the appellant accepted and paid for.

That Brownlow bought a lot of cattle from one Smith on one occasion, and a bull from one Wallace on another for appellant, was all that was proven in support of the existence of an alleged general agency of Brownlow to buy cattle for him.

Brownlow and the appellant both testified that these purchases were made by special direction and authority given in each instance to do so.

The appellee, over the objections of the appellant, was permitted by the court to testify that Brownlow, in a conversation between them some time after the alleged sale of the cattle, told him (the appellee) that he (Brownlow) wrote to the appellant "that he had bought the appellee's cattle," and that the appellant told him (Brownlow) "that the price paid for the cattle was too high and not to buy any more at that price." All will recognize the value and importance of such evidence to the appellee and its damaging effect to the defense of the case.

It amounted to an admission of the authority of Brownlow to buy the cattle and moreover a ratification of the purchase.

If not competent it was clearly so prejudicial to the appellant as to demand a reversal. We think it was incompetent. Why should a conversation between the appellee and Brownlow go to the jury as evidence against Ransom? Manifestly only because of the legal identity of principal and agent. But here the agency was denied, and the existence of that relation was the chief matter at issue. The purpose and intent of this evidence was to prove that Brownlow had authority to act for Ransom to prove the agency.

The existence of an agency can not be proved by the mere admissions and statements of the supposed agent when not engaged in performing the business of the agency. Proctor v. Tows et al., 115 Ill. 138.

Nor could a ratification by Ransom of the acts of Brownlow be established by the declarations of Brownlow. This conversation between Brownlow and the appellee was, as to Ransom, mere hearsay.

An admission of Ransom as to the authority of Brownlow to act for him, or that he ratified and adopted the act of Brownlow, is competent to be proven in evidence against him; but the declarations of Brownlow, to be admissible in evidence against Ramsom, must have been made while he was engaged in transacting and performing the business of the agency as a verbal act of agency. 1 Greenleaf on Evidence, Sec. 113; C., B. & Q. R. R. Co. v. Lee, 60 Ill. 501.

The full effect of this improper testimony upon the minds of the jury can not be known. Its detrimental influence can not be doubted, and it may have operated to determine the issue against the appellant.

The judgment must therefore be reversed and the cause remanded.