THE CENTRAL RAILWAY COMPANY

*v.*

JOHN C. ALLMON.

*Filed at Ottawa October 26, 1893.*

1. NEGLIGENCE—*street railway company—excessive speed of cars.* If the average rate of speed fixed by the schedule of a street railway company is excessive, in view of the stops necessary to be made in the route, the company will be responsible for an accident occurring from the fact that one of its servants was speeding a car in conformity with the schedule of the company.

2. EVIDENCE—*to show rate of speed of an electric car at the time of a collision.* In an action against a street railway company to recover for a personal injury to the plaintiff by a collision of its cars with a buggy in which the plaintiff and two others were riding, evidence of the distance of the round trip of the cars, and of the schedule time for making such trip, is admissible in behalf of the plaintiff, in connection with other testimony introduced as to the rate of speed of the car at the time of the collision.

3. If the round trip of the cars was about ten miles, and the time, as fixed by the company in its schedule, was one hour for making the round trip, proof of this tends to establish the average rate of speed as being ten miles an hour. While such evidence is not conclusive as to such average rate of speed, yet it is admissible as tending to prove such average rate.

4. In such case, it is for the jury, looking at all the evidence, to say whether the man in charge of the car which collided with the buggy was unnecessarily driving the car at an excessive rate of speed, or whether the company had, by its schedule, fixed such a short time for making the round trip that the motor-man was obliged to go at an excessively rapid rate in order to make all the required stops and pass. over the length of the line within the prescribed time.

5. In an action for a personal injury against a street railway company, based upon a charge of negligence in operating its cars at an excessive rate of speed, resulting in a collision, proof of the schedule time fixed by the company for the passage of its cars over a specified distance is not admissible for the purpose of showing negligence in running its cars on other trips than the one in question, but only for the purpose of determining the average rate of speed, as a basis of comparison with the rate of speed at which the car colliding was traveling.

6. SAME—*relevancy.* Testimony not manifestly relevant should not be excluded, when its relevancy may be made to appear by proof *aliunde.* The question is, whether the offered proof tends to support the defense or cause of action, and all evidence tending to prove either of the material facts is admissible, although it may not, alone, establish the whole case.

7. SAME—*conclusions of witness.* It is a general rule that a witness must testify to facts, and not to his opinions. But when the witness testifies to facts showing that his opinion was the only conclusion that can be drawn from the facts, the error in allowing him to state that opinion will be harmless, and afford no ground of reversal.

8. Where the inference to be drawn from a given state of facts is not clear or certain, a jury in whose hearing the facts are recited may be influenced by the opinion of a witness who tells them his conclusion therefrom. It is otherwise when only one conclusion, and that an obvious and necessary one, suggests itself as soon as the facts are presented.

9. WITNESS—*impeachment—cross-examination as to collateral matters.* A witness can not be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence.

10. On the trial of an action against a street railway company, charged with negligence in failing to stop the car before a collision, the conductor of the car testified that he applied the brake as soon as he could, and did all that he could to stop the car: *Held,* that it was proper cross-examination to ask him if he had not, on a previous occasion, stated that he forgot to put on the brake, and that he could have stopped the car if he had not lost his head.

11. A witness may be asked, on cross-examination, if he has not theretofore given a different account of the matter of fact to which he has testified, in order to lay a foundation for impeaching his testimony by contradicting him.

12. If a witness has simply testified to a matter of fact, his previous opinion as to the merits of the cause can not be regarded as relevant to the issue. Hence the questions put to him on cross-examination, with a view of laying a foundation for his impeachment, should be directed to matters of fact, only, and not to mere opinions which he has formerly expressed. The latter are inadmissible, unless the case is one where evidence of opinion is material.

13. Where, for the purpose of laying the foundation for an impeachment, the attention of a hostile witness is directed, on cross-examination, to a previous account given by him of the transaction, testified to on the direct examination, and in such previous account he appears to have mingled his statement of a fact with an expression of his own opinion in reference to the character or quality of that fact, an objection that the previous account referred to contains matter of opinion as well as matter of fact should be specifically pointed out at the time the question is asked, so that the interrogatory may be so changed as to refer to the matter of fact, only.

14. SAME—*opinion—effect regulated by instruction.* If the matters of opinion and fact are so intimately blended in the previous account as not to be easily susceptible of separation, the objecting party can have the former excluded from the consideration of the jury by asking proper instructions to that effect.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

Messrs. STEVENS & HORTON, and Messrs. KEEP & LOWDEN, for the appellant:

The court erred in permitting the plaintiff, over the objections of the defendant, to introduce evidence of the distance of the round trip on Adams street, and the schedule time for making that trip.

In an action for negligence it is not proper to show negligence of the defendant at other times. *Railroad Co.* v. *Lee,* 60 Ill. 501; *Parker* v. *Publishing Co.* 69 Me. 173; *Railroad Co.* v. *Clayberg,* 107 Ill. 644; *Hodges* v. *Bearse,* 129 id. 87.

As to the evidence impeaching Barnhouse, see 1 Greenleaf on Evidence, sec. 449; Rice on Evidence, 621; Taylor on Evidence, part 1, 1445; *Elton* v. *Larkins,* 5 C. & P. 385; *Holmes* v. *Anderson,* 18 Barb. 420.

The court permitted counsel for plaintiff to make improper. use of the evidence in his argument before the jury.

Messrs. WORTHINGTON, PAGE & BRADY, for the appellee:

Evidence of the length of the round trip was proper, as tending to show the average speed of the car. Testimony is admissible if it. tends to prove a fact. It is for the jury to weigh the evidence, and say how much or what it proves. *Rogers* v. *Brant,* 5 Gilm. 573; *Chicago* v. *Dalle,* 115 Ill. 386; *Slack* v. *McLagan,* 15 id. 242; *Hough* v. *Cook,* 69 id. 581.

Evidence not manifestly relevant may be admitted, when it appears that its relevancy may be made out by proof *aliunde. Bedell* v. *Janney,* 4 Gilm. 193.

When an opinion is a mere shorthand rendering of the facts, then it may be given, subject to cross-examination. 1 Wharton on Evidence, secs. 510, 511.

Testimony competent for any purpose is admissible. As to the admissibility of evidence impeaching an agent, who is a witness, by showing that he has made contradictory statements, see *Railway Co.* v. *Ingraham,* 131 Ill. 608; *Ice Machine Co.* v. *Keifer,* 134 id. 481.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action brought by the appellee, who is a minor, by his next friend, against the appellant company to recover damages for a personal injury. The appellant operates a Street Railway line, propelled by electricity, in the city of Peoria. On February 15, 1891, which was Sunday, the appellee, a boy about sixteen years old, was riding with two other lads in a buggy on Adams Street in that city when the buggy came into collision with one of the company's cars,

causing the injury complained of. The declaration charges negligence against the defendant in operating its car at an excessive rate of speed, and in failing to take notice of the buggy while on the track by reason of the shieing of the frightened horse, and to stop the car in time to avoid the collision. Verdict and judgment in the Circuit Court were in favor of the plaintiff. The judgment of the Circuit Court has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

All the facts are settled by the judgment of the Appellate Court. No complaint is made of any instruction given, or of any instruction refused. The objections insisted upon relate to the admission of testimony and to the remarks of counsel before the jury.

*First*, it is contended that the court erred in permitting the plaintiff, over the objection of the defendant, to introduce evidence of the distance of the round trip on Adams Street and of the schedule time for making that trip. It appeared, that the distance of a round trip was about ten miles, and that the schedule time for making such trip, exclusive of stops at each end of the line, was one hour. We see no objection to the testimony when taken in connection with other testimony introduced as to the rate of speed. The charge was, that the car was traveling at an excessive rate of speed. If the time, as fixed by the company in the schedule adopted by it, was one hour for making the round trip, then this proof tended to establish the average rate of speed as being at the rate of ten miles an hour. This was not an accurate criterion of the rate, because it was impossible to tell the exact number of stops that would be made between the ends of the line. The proof shows, that such stops might be more numerous on one trip than another, and on Sunday than on any other day of the week. But while proof of one hour as the schedule time for making a trip of ten miles may not have been conclusive evidence that the average rate was ten miles an hour,

yet it was admissible as tending to prove such average rate.. (*C. B. & Q. R. R. Co.* v. *George,* 19 Ill. 510). Other testimony was introduced by the plaintiff, some of which was to the effect that the car which collided with the buggy was, at the time of the collision, going at the rate of fifteen miles per hour; some of which showed that it was going at the rate of from fifteen to twenty miles an hour; and some of which fixed the rate at from twenty to twenty five miles an hour. It was for the jury, looking at all the evidence, to say whether the motor-man in charge of the car which collided with the buggy was unnecessarily driving the car at an excessive rate of speed, or whether the company had, by its schedule, fixed such a short time for making the round trip, that the motor-man was obliged to go at an excessively rapid rate in order to make all the required stops, and pass over the length of the line, within the prescribed time.

It often happens, that a case must be established by a number of facts, any one of which by itself would be of little weight, but all of which, taken together, would prove the issue. Evidence which, standing alone, may not be sufficient. to make out a case, may aid in doing so. Testimony not manifestly relevant should not be excluded where its relevancy may be made to appear by proof *aliunde.* The question is, whether the offered proof tends to support the defense, or the cause of action. All evidence tending to prove either of the material facts is admissible, although it may not alone establish the whole case. (*Bedell* v. *Janney,* 4 Gilm. 193; *Rogers* v. *Brent,* 5 id. 573; *Slack* v. *McLagan,* 15 Ill. 242; *Hough* v. *Cook,* 69 id. 581; *City of Chicago* v. *Dalle,* 115 id. 386). Counsel for appellant invokes the rule, that acts of negligence committed by the defendant at other times cannot be shown in order to prove negligence at the time of the accident. For example, where the negligence charged is failure to ring a bell or sound a whistle when a railroad train is approaching a crossing with unusual speed, it is held, that proof

of previous failures to give such signals when passing the crossing is inadmissible.   (*C. B. and Q. R. R. Co.* v. *Lee,* 60 Ill. 501; *P. & P. U. R'y Co.* v. *Clayberg,* 107 id. 644).   This rule is undoubtedly a correct one.   But proof of the schedule time, fixed by the defendant for the passage of its cars over a specified distance, was not introduced for the purpose of showing that the defendant had been propelling its cars at an excessive rate of speed on other trips than the one in question, but for the purpose of showing the average rate of speed as a basis of comparison with the rate of speed at which the car, colliding with the buggy, was traveling.   If the average rate of speed fixed by the schedule of the company was excessive in view of the stops necessary to be made on the route, then the company would be responsible for an accident which occurred because one of its servants was speeding the car in conformity with its own schedule.

*Second,* it is claimed that the court erred in permitting the witness, Daniel Allmon, to testify, over the objection of the defendant, that his brother, the plaintiff, could not have jumped from the buggy and avoided the injuries complained of.   It appears from the evidence, that plaintiff was sitting in the buggy between his brother, Daniel, on the one side and the young man, Grundenburg, on the other.   The top of the buggy was raised.   Daniel was driving.   The horse became frightened at the approaching car, and reared and plunged forward upon the car track.   Grundenburg reached forward, and took hold of the reins in order, if possible, to assist Daniel in controlling the horse, and in turning him off the track and away from the approaching car.   It is manifest, that the plaintiff being in the middle between his brother and Grundenburg, was completely hemmed in by the outstretched arms of his companions holding the reins on each side of him.   The car was only a few feet distant, and was rapidly approaching upon a grade slanting down towards the buggy.   This condition of things being disclosed by the evidence, Daniel, when on

the stand as a witness, was asked whether or not his brother, the plaintiff, "could have gotten out of the buggy at any time from the time the horse commenced to plunge and rear until the car struck the horse?" The question was objected to as calling for an opinion, but the objection was overruled; and the defendant excepted. The witness then answered: "He could not." It was most certainly true, that the plaintiff could not have escaped from the buggy under the circumstances without jumping over the extended arms which encircled him, or leaping over the dash board in front of him, or plunging through the rear of the buggy. But it is said, that the witness should have been called upon to state the position of the parties and all the circumstances and facts of the situation, and that, then, it should have been left to the jury to draw the conclusion, whether the plaintiff could or could not have alighted from the buggy.

It is a general rule, that a witness must testify to facts and not to opinions; and it may be admitted that the statement of the witness in this case was technically inadmissible; but it could not have done the defendant any harm, because the witness stated the facts upon which his conclusion was based, and that conclusion was one which the jury must necessarily have drawn from such facts, if he had not announced it. Where the inference to be drawn from a given state of facts is not clear or certain, a jury, in whose hearing the facts are recited, may be influenced by the opinion of a witness who tells them his conclusion therefrom. It is otherwise, however, where only one conclusion, and that an obvious and necessary one, suggests itself as soon as the facts are presented. When the proof, showing the situation and surroundings of the plaintiff and his companions as the same have been above set forth, was introduced and heard by the jury, the impossibility of getting out of the buggy in safety was apparent at once; nor could it have been made any more apparent by what the witness said about it. The facts detailed by him so plainly

involved the conclusion announced by him, that his opinion amounted to nothing more than a description of the situation which he saw, and of which he was a part. (*Spear* v. *Richardson*, 34 N. H. 428; 1 Wharton's Law of Evidence, secs. 509 to 513 and notes; 7 Am. & Eng. Enc. of Law, pages 492, 493 and notes).

*Third*, it is assigned as error, that the plaintiff was permitted to offer improper evidence for the purpose of impeaching the witness, Barnhouse. Barnhouse was the motor-man or conductor who had charge of the car at the time of the accident, and testified for the defendant as to the incidents before, after and at the time of the injury to the plaintiff. He testified upon his direct examination as follows: "What, if anything, did you do to check the speed of that car when you saw the horse jumping? Ans. I applied the brake. Ques. How soon after you noticed the horse jumping did you apply the brake? Ans. Instantly, as quick as I could possibly set the brake. * * * Ques. What, if anything, it was possible for you to do you did not do to stop that car as soon as you saw the horse was frightened? Ans. There was nothing." Upon cross-examination by the plaintiff, the witness admitted that, on the day or the next day after the accident, he called at the house of Mr. Allmon, and there had a conversation at which Patrick Powell, Katie Allmon and Mary Allmon were present. It is admitted that the attention of the witness was properly called to the time and place of this interview. (*Quincy Horse Railway Co.* v. *Gnuse*, 137 Ill. 264.). He was asked upon his cross-examination, as to the said conversation, the following questions and made the following answers: "Ques. I will ask you if Mr. Powell did not say to you, in substance, 'Somebody must be to blame,' and if you did not answer in substance, 'The fact of the matter is, that I neglected my own business and forgot to put on the brake on my car?' (Objected to, etc.) Ans. No, Sir. * * * Ques. I will ask you if, in that same conversation, Miss Katie Allmon

did not say to you, in substance, 'Well, you could have stopped the car,' and if you did not answer, in substance, 'Yes, if I had not lost my head?' Ans. No, Sir, I did not." In rebuttal, the plaintiff proved by Powell and Katie Allmon, that Barnhouse did say in that conversation what he denied having said as above set forth.

This rebutting evidence was expressly limited by the court to the purpose of the impeachment of the witness, Barnhouse. If we understand counsel for appellant, they make two points. In the first place, they say that the questions put to the witness on cross-examination were collateral or irrelevant to the issue, and that, therefore, the answers cannot be contradicted by the plaintiff but must be taken as conclusive against him. The rule is, that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence. (1 Greenl. on Ev. sec. 449). But we think, that the questions here addressed to the witness on cross-examination were proper in view of what had been said on the direct examination; they did not call for matters which were collateral or irrelevant to the issue. One of the charges of negligence in the declaration was, that defendant's servant did not stop the car in time to avoid the collision. After the conductor had stated on his direct examination, that he applied the brake as quickly as he could and did all that he could do to stop the car, it was certainly legitimate cross-examination to ask him, if he had not on a previous occasion stated, that he forgot to put on the brake and that he could have stopped the car if he had not lost his head. A witness may be asked on cross-examination, if he has not theretofore given a different account of the matter of fact to which he has testified, in order to lay a foundation for impeaching his testimony by contradicting him. (1 Greenl. on Ev. sec. 449). The second point is, that the questions put to the witness on cross-examination called for a former opinion of the witness as to the matter in issue. It

is unquestionably true, that, if a witness has simply testified to a fact, his previous opinion as to the merits of the cause cannot be regarded as relevant to the issue. Hence, the questions addressed to him on cross-examination with a view of laying a foundation for his impeachment should be directed to matters of fact only, and not to mere opinions which he has formerly expressed; the latter are inadmissible unless the case is one where evidence of opinion is material. (2 Taylor on Ev. pt. 1, sec. 1445; 1 Rice on Ev. page 621; 1 Greenl. on Ev. sec. 449; *Elton* v. *Larkiss,* 5 Carr. & Payne 385; *Holmes* v. *Anderson,* 18 Barb. 420). There is much force in this point as to a part of the former statement made by the witness to which his attention was called by the cross-examination. The objectionable part is contained in these words: "I neglected my own business." But his statement that he neglected his business was coupled with, and explained by, the further statement that he forgot to put on the brake. When he said that he forgot to put on the brake, he stated a fact. It will thus be seen, that the question was directed to a matter of mixed opinion and fact. No objection was made by the defendant to that portion of the question which had reference to the matter of opinion. The objection was directed to the question as a whole, and upon other grounds than that it called for a previous statement of opinion. The defendant not only made no objection to the objectionable part of the question as referring to an expression of opinion, but asked for no instruction limiting the attention of the jury to the portion calling for a statement of fact. Under these circumstances, we do not regard the reference of the witness to his neglect of his business as constituting error sufficient to justify a reversal. Where, for the purpose of laying the foundation for an impeachment, the attention of a hostile witness is directed on cross-examination to a previous account given by him of the transaction testified to on the direct examination, and in such previous account he appears to have mingled

31—147 ILL.

his statement of a fact with an expression of his own opinion in reference to the character or quality of that fact, an objection, that the previous account referred to contains matter of opinion as well as matter of fact, should be specifically pointed out at the time the question is asked, so that the interrogatory may be so changed as to refer to the matter of fact only. (*Chicago West Division Railway Co.* v. *Ingraham*, 131 Ill. 669). If the matters of opinion and fact are so intimately blended in the previous account as not to be easily susceptible of separation, the objecting party can have the former excluded from the consideration of the jury by asking proper instructions to that effect. (*Consolidated Ice Machine Co.* v. *Keifer*, 134 Ill. 481.)

*Fourth,* it is said that counsel for plaintiff was allowed to make improper use of the evidence in his argument before the jury; that is to say, it is claimed that the evidence introduced for the purpose of impeaching Barnhouse was made use of in the argument for the purpose of showing that the company was guilty of negligence. When counsel for defendant objected to the remarks of counsel for plaintiff the latter disclaimed any intention of referring to the testimony in question for any other purpose than that of showing that the witness was contradicted. After an examination of the language used as it is set out in the record, we cannot see that it can be construed as bearing upon any other subject than the impeachment of the conductor. Where, on a trial for murder, the state's attorney commented on testimony introduced to impeach a witness for defendant, and referred to it as showing a reason for defendant's presence near the scene of the crime; but, upon defendant excepting to such reference, he stated to the jury that he called attention to it for the sole purpose of impeaching the witness; it was held, on appeal, that such reference did not seriously affect defendant's rights. (*Cook* v. *State*, 30 Texas App. 607).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*